FILED
DEC 2 8 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

BRENTEN PHILLIP SHANER,

Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security

Defendant.

Civil No. 09-6021-AC

FINDINGS AND RECOMMENDATION

ACOSTA, Magistrate Judge:

*Findings and Recommendation*

Brenten Phillip Shaner ("Shaner") challenges the Commissioner's decision denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"). This court has jurisdiction under 42 U.S.C. § 405(g). For the reasons set forth below, the Commissioner's decision should be reversed and remanded for additional proceedings.

Page 1 - FINDINGS AND RECOMMENDATION                                    [LB]

*Procedural Background*

Shaner filed his application for DIB on November 16, 2005, alleging disability since August 30, 2004, due to post-traumatic chondromalacia of the medial compartment of the right knee, requiring him to use a cane. Shaner's application was denied initially and upon reconsideration. On January 9, 2008, after a timely request for a hearing, Shaner appeared and testified before an administrative law judge ("ALJ"). Shaner was represented by counsel, Robert Baron. Kathleen A. O'Gieblyn, a vocational expert ("VE"), also appeared and testified.

On March 14, 2008, the ALJ issued a decision finding Shaner not disabled, as defined in the Act. Shaner filed a request for review of the ALJ's decision. On November 17, 2008, the Appeals Council denied Shaner's request for review of the ALJ's decision, making it the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 422.210.

*Discussion*

The court reviews the Commissioner's decision to ensure the proper legal standards were applied and the findings were supported by substantial evidence in the record. 42 U.S.C. § 405(g). *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). The ALJ applied the five-step sequential disability determination process set forth in 20 C.F.R. § 404.1520. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ resolved Shaner's claim at the fourth step of that process, determining Shaner retained the residual functional capacity ("RFC") to perform his past work. Additionally, the ALJ also noted that Shaner could perform other work in the national economy.

A claimant's RFC is an assessment of the sustained work-related activities he can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 C.F.R. §§

[LB]

404.1520(e), 404.1545; Social Security Ruling ("SSR") 96-8p. The ALJ assessed Shaner's RFC as

follows:

> [T]he claimant has the residual functional capacity to perform light work. Light work involves lifting and carrying up to 20 pounds occasionally and 10 pounds frequently. The same limits are applicable to pushing and pulling with the lower extremities. With normal breaks, the claimant has the ability to sit for at least 6 hours in an 8 hour work day and stand or walk for 30 to 60 minutes at one time each for a total of 2 hours during an 8 hour work day provided he is allowed [to] move around or sit as needed. He may need use of a cane and is limited to occasional climbing of ramps and stairs. The claimant must further avoid twisting, stooping and climbing of ladders and scaffolds and needs to avoid unprotected heights and balance hazards. . . .

(Tr. 14.)[1]

Shaner asserts several challenges to the ALJ's and Appeals Council's decisions to deny his benefits application. Specifically, he contends first that the ALJ erred when he failed to credit the opinion of Dr. Christopher Walton, the treating orthopedic surgeon. Next, Shaner charges the Appeals Council erred when it failed to credit the opinion of Dr. Larry J. Maukonen, an examining neurologist (post-hearing). Thirdly, Shaner contends the ALJ erred when he failed to give clear and convincing reasons for rejecting his testimony. Finally, Shaner maintains the ALJ erred at Step Three of the sequential analysis when the ALJ determined Shaner's knee condition did not meet the criteria of Listing 1.02A and 1.03.

This court finds the ALJ failed to consider properly the medical evidence presented by Dr. Walton and to develop the record fully. Additionally, the court finds the new evidence, submitted for the first time to the Appeals Council, should be considered by the ALJ. Finally, the ALJ failed

---

[1] "Tr." refers to the official transcript of the administrative record. (Docket # 15.)

[LB]

to provide clear and convincing reasons for rejecting Shaner's subjective testimony regarding his pain and symptoms. All of these issues must be resolved by the ALJ before a determination of disability can be made. Accordingly, the decision of the ALJ should be reversed and the case should be remanded for additional proceedings.

I.    Dr. Walton - Treating Physician

Shaner maintains the ALJ failed to credit Dr. Christopher Walton's opinion in two important respects. First, Shaner argues the ALJ improperly rejected Dr. Walton's finding that Shaner's condition meets the criteria of Listing § 1.03,[2] and failed to address Dr. Walton's opinion that Shaner

---

[2]A Listing § 1.03 determination requires:

Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.03.

The inability to ambulate effectively is defined as:

[A]n extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

Id. at § 1.00B(2)(b)(1).

[E]xamples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home

[LB]

also meets the criteria of Listing § 1.02A.[3]  Second, Shaner argues the ALJ failed to address Dr. Walton's opinion that Shaner needs to recline and elevate his knee four out of eight hours during the day.

To establish a physical or mental impairment, a claimant must provide evidence from medical sources.  The Code of Federal Regulations ("Code") defines "acceptable medical sources" as:  licensed physicians, optometrists and, podiatrists; licensed or certified psychologists; and qualified speech language pathologists.  20 C.F.R. § 404.1513(a).  Further, a distinction is made among the opinions of three types of physicians:  (1) those who treat the claimant ("treating physician"); (2) those who examine but do not treat the claimant ("examining physician"); and (3) those who neither examine nor treat claimant, but review claimant's medical records ("non-examining physician").  *See* 20 C.F.R. § 404.1527(d); *see also Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001).  Regardless of the classification of a particular medical provider, the

---

without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.* at § 1.00(B)(2)(b)(2).

[3]A Listing § 1.02A determination requires:

1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.]

20 C.F.R Pt. 404, Subpt. P, App. 1 § 1.02A.

Page 5 - FINDINGS AND RECOMMENDATION

[LB]

ALJ is never relieved of this obligation to consider evidence submitted by each source and provide some reason for rejecting that evidence. *See* 20 C.F.R. § 404.1527(d) ("Regardless of its source, we will evaluate every medical opinion we receive.").

Generally more weight is ascribed to the opinion of a treating source than to the opinions of physicians who do not treat the claimant. *See Holohan*, 246 F.3d at 1201-02; *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). The ALJ may not reject the uncontroverted opinion or ultimate conclusions of a treating physician (or examining physician) without providing "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quotations and citation omitted). If the opinion is contradicted by other physicians, the ALJ must explain his decision with specific, legitimate reasons. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Shaner was first examined by Dr. Walton, an orthopedic surgeon, on January 28, 2002. (Tr. 171.) Dr. Walton noted that a right knee arthroscopy, from March 2001, showed a partial medial meniscus tear and significant articular injury in the medial femoral condyle. (Tr. 171.) Dr. Walton performed right knee arthroscopy with chondroplasty of the patella and femoral condyle. (Tr. 169.) Approximately six months later, in August 2002, Dr. Walton performed a closing examination and noted Shaner "actually is functioning reasonably well." (Tr. 175.) Dr. Walton determined that Shaner should have no pushing or pulling in excess of 20 pounds; no twisting, climbing or stooping; and should move around or sit, as needed for comfort. (Tr. 175.) Dr. Walton concluded Shaner "should be kept at a sedentary work level." (Tr. 175.)

[LB]

There are no medical records in evidence between August 2002, and December 2005. In December 2005, Shaner was examined by Dr. Kurt Brewster at the request of the Oregon Department of Human Services in connection with Shaner's claim for disability benefits. (Tr. 86, 177.) Dr. Brewster concluded, in part, that:

> [Shaner's] history was consistent with crush injury and some internal derangement.
>
> Arthritic changes are definitely a consequence and should be observed on plain films.
>
> On physical exam today, he shows mild atrophy of the thigh and increased circumference difference left calf.
>
> He has some gait abnormalities while the remainder of exam was essentially normal.
>
> . . . .
>
> [Shaner] is significantly limited in walking and standing due to the problems listed above.

(Tr. 182-83.)

With respect to Shaner's functional assessment, Dr. Brewster determined:

> **Walking/Standing**
> Severely limited due to knee pain. Less than 6 hours in an 8-hour day, therefore, 2 hours in an 8-hour day with 15 minute breaks every two hours.
>
> **Sitting**
> Limited to a lesser extent, given pain and swelling. [Shaner] has been able to perform seated exercise (such as bicycle) and sedentary work for a year. Estimate 6 hours in an 8-hour day.
>
> **Assistive Device**
> Medically necessary.
>
> **Lifting and/or Carrying Frequently/Occasionally**
> Limited when standing due to aggravating knee problems. Less while seated. Estimate twenty pounds maximum, ten pounds frequently.

[LB]

**Postural**
Frequent restrictions on climbing and crawling given ongoing knee pain.

**Manipulative**
No fine or gross motor deficits by history or by exam.

**Environmental**
Balancing will be affected and should avoid heights.

(Tr. 183.)

In April 2006, Shaner once again sought treatment from Dr. Walton for increasing pain in the knee. (Tr. 206.) Following an examination, Dr. Walton restricted Shaner to sedentary work only and ordered and MRI "to evaluate for meniscal injury as well as patellofemoral tracking." (Tr. 208.) Dr. Walton diagnosed post-traumatic chondromalacia medial compartment of the right knee and administered a cortisone injection. (Tr. 205.)

Shaner returned to Dr. Walton the next month and reported more pain in his knees than usual. (Tr. 204.) Dr. Walton ordered a bone scan (in both knees), which was "[e]ssentially normal." (Tr. 203.) Dr. Walton concluded that:

> [Shaner] is stationary. Care is palliative and would consist of bracing. Bilateral hinged knee sleeves are prescribed. I do not feel an arthoplasty procedure would be of any benefit to him, in fact could worsen his process. . . . [Shaner] is available for sedentary work only secondary to limiting bilateral knee pain. No further follow-up is planned at this time. There is no change in his previously stated range of motion or status.

(Tr. 203.)

Over a year later, in July 2007, Shaner returned to Dr. Walton for palliative care evaluation. Shaner reported increasing stiffness in his knee and requested another cortisone injection. (Tr. 201.) Dr. Walton determined Shaner's work restrictions remained unchanged, sitting as needed, with a 50 pound lifting maximum and no squatting or kneeling. (Tr. 201.)

[LB]

On January 18, 2008, Shaner's counsel, Robert Baron, forwarded to Dr. Walton a copy of Dr. Brewster's December 2005 examination, and the "Physical Residual Functional Capacity Assessment" completed by Dr. Richard Alley, a non-examining physician, in December 2005. (Tr. 214) In addition, Baron set out the ALJ's hypothetical to the VE and asked Dr. Walton to address a series of questions regarding Shaner's condition, including whether Shaner's condition met the criteria set forth in either Listing §§ 1.02A or 1.03. (Tr. 215-17.) In response to Baron's question regarding Dr. Brewster's independent medical evaluation, Dr. Walton stated that he was "in general concurrence" with that December 2005 medical evaluation. (Tr. 213.) Dr. Walton also responded that he thought Shaner's impairment met the criteria of Listing §§ 1.02A or 1.03. (Tr. 213.) In response to Baron's inquiry whether considering the severity of Shaner's condition, would it be expected he would need to recline and elevate his knee four out of eight hours, Dr. Walton answered "yes." (Tr. 216, 213.) Finally, regarding Baron's question about whether he would expect Shaner to have absences of two or more days per month, Dr. Walton stated: "If the job were set up so he could rest effectively, I don't know that he would need to miss any work." (Tr. 213.) Based on this evidence from Dr. Walton, along with Shaner's hearing testimony that he was unable to walk on uneven or rough ground and, at times, he had difficulty climbing even one step to his house, Shaner contends the ALJ erred when he concluded Shaner was able to ambulate effectively as defined by section 1.00B(2)(b)(1).

After a careful review of the record, the court is satisfied the ALJ provided clear and convincing reasons, supported by substantial evidence in the record, for his determination that Shaner did not meet either (§1.02A or §1.03) Listing criteria. Specifically, the ALJ found that Shaner "has no impairment which meets the criteria of *any of the listed impairments* described in

[LB]

Appendix 1 of the Regulations (20 CFR 404, Subpart P, Appendix 1)." (Tr. 14 (*emphasis added*).) As set forth above, in December 2005, Dr. Brewster provided a functional assessment that, among other things, Shaner's walking and standing were "[s]everely limited due to knee pain. Less than 6 hours in an 8-hour day, therefore, 2 hours in an 8-hour day with 15 minute breaks every two hours." (Tr. 183). As Shaner even acknowledges, Dr. Brewster assessed limitations generally equivalent to those adopted by the ALJ, except the ALJ set forth *additional* limitations in his RFC assessment that were not addressed by Dr. Brewster. (Pl.'s Brief 14; Tr. 14 (emphasis added).) In his letter, Dr. Walton plainly stated that he had "[r]eviewed the independent medical evaluation by Dr. Brewster, which I am in general concurrence with." (Tr. 213.) In addition, Dr. Walton noted that Dr. Brewter's assessment was "fairly consistent" with Dr. Walton's previous evaluations and treatment of Shaner. (Tr. 213.) Nor did Dr. Walton reference, or even allude to, any particular disagreement with the findings of Dr. Brewster, including the functional assessment. Thus, it was reasonable for the ALJ to conclude that Dr. Walton was in agreement with the RFC set forth in Dr. Brewster's report, which did not preclude ambulation. The ALJ set forth clear and convincing reasons for his finding that "there is no evidence of an inability to ambulate effectively as defined in (1.00(B)(2)(b)," which would preclude a finding that Shaner met the criteria for either a §1.02A or §1.03 Listing.[4] (Tr. 13.)

The court turns next to Dr. Walton's opinion that Shaner needs to recline and elevate his knee four out of eight hours each day. The Commissioner does not dispute that the ALJ failed even to

---

[4]In reviewing Shaner's assignment of error challenging the ALJ's finding that Shaner did not satisfy the criteria for any listed impairment, the court's decision here is based solely on the record before the ALJ. As discussed in Section II below, there was new evidence from Dr. Maukonen submitted to the Appeals Council, after the ALJ's decision, that bears on the issue of Shaner's ability to ambulate effectively, i.e., whether he is able to traverse uneven surfaces.

[LB]

mention this opinion from Dr. Walton. Nevertheless, the Commissioner urges the court to find the ALJ's failure to discuss this finding was harmless error because Dr. Walton did not provide a detailed rationale for his opinion and, in any event, the requirement to elevate his knee each day does not necessitate a finding of disability.

With respect to the Commissioner's first argument for finding harmless error, the law is well-established that an ALJ is not permitted to ignore the opinion of a treating physician. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n.9 ("Of course, an ALJ cannot avoid these requirements simply by not mentioning the treating physician's opinion and making findings contrary to it."). Further, an ALJ is required to recontact the treating physician to assist in the development of the record if the medical evidence is inadequate for a disability determination. *See, e.g., Thomas*, 278 F.3d at 958; *see also* 20 C.F.R. §416.912(e) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.").

With respect to the Commissioner's second argument for a finding of harmless error because a requirement that Shaner recline his knee each day does not preclude all work, that determination must be made by the ALJ with the assistance of the VE. The Commissioner's argument that Shaner may still be able to work despite such a limitation does not substitute for the ALJ's statutorily mandated duty to determine whether Shaner retains the RFC to perform work in the national economy. Here, the VE testified that a requirement to elevate your leg all day on four to five days per month and, typically, for four hours out of an eight-hour shift, "would interfere with one's ability to meet production." (Tr. 53.) Additionally, the VE testified that having a pillow at the worksite and

Page 11 - FINDINGS AND RECOMMENDATION                                    [LB]

needing to elevate the leg was "certainly an accommodation" and employers are not required to provide accommodations that would seriously limit production. (Tr. 54.)

The court finds the ALJ failed to provide clear and convincing reasons for rejecting Dr. Walton's testimony that Shaner must reline and elevate his knee. Nevertheless, it is for the ALJ to decide in the first instance whether Dr. Walton's testimony regarding a requirement that Shaner elevate his knee each day should be credited and, if so, whether that additional limitation would preclude work and necessitate a disability finding.

II.    Dr. Maukonen - Examining Physician

Next, Shaner challenges the denial of benefits on the ground the Appeals Council erred when it failed to credit the opinion of Dr. Maukonen, a post-hearing examining neurologist. Dr. Maukonen's assessments were not before the ALJ because Shaner did not obtain the follow-up evaluation until after his claim was denied. Shaner offers no reason for this delay.

On May 22, 2008, more than two months after the ALJ's decision issued in this case, Shaner was examined by Dr. Maukonen, who diagnosed Shaner with, among other things, "[c]hronic right knee pain post traumatic injury to the medial femoral chondyle and torn meniscus[;] [p]ost-arthroscopy surgery times 2 to the right knee[;] [ p]ersistent right knee pain with recurrent cortisone injections with only transient improvement." (Tr. 223.) Additionally, Dr. Maukonen completed a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" and included the following limitations:  Shaner should never lift up to 10 pounds from the floor, but could occasionally carry 11 to 20 pounds; his right knee did not allow him to safely bend or squat to pick up from the floor;  Shaner could only carry with one hand or arm because he needed to use a cane to help with his balance; he could sit for one hour and stand or walk slowly and with a cane on

[LB]

smooth surfaces for 10 to 15 minutes at a time; Shaner could stand for an hour and walk for an hour out of an eight-hour day slowly with a cane on smooth surfaces; he could continuously use his left foot, but only occasionally use his right foot for operation of foot controls; Shaner could occasionally climb stairs and ramps slowly, one step at a time, and stoop but, he could never climb ladders or scaffolds, balance, kneel, crouch or crawl. (Tr. 224-25, 227.)

Also, in June 2008, in response to questions from Shaner's counsel, Dr. Maukonen stated that Shaner could sit for four hours in an eight-hour workday in a typical chair (not reclined); his report that he needed to elevate and intermittently ice his knee nearly all day for four or five days per month *was not* medically reasonable or expected, considering the severity of his knee condition; Shaner's report that during a typical day he elevated his knee for four out of eight hours was expected, considering the severity of his condition; he would need to prop his knee up with a pillow underneath; and Shaner's knee condition was sufficiently severe that he would be unable to maintain a regular work schedule on more than two days per month. (Tr. 230-32 (emphasis added).)

The Appeals Council considered Dr. Maukonen's May and June 2008 assessments of Shaner and concluded:

> [T]he opinion of Dr. Maukonen, that you are limited to less than sedentary work does not appear to be relevant to the period pre date last insured and, furthermore, is inconsistent with his evaluation and the totality of the evidence including, the report from the consulting physician, Dr. Brewster . . . indicating you are limited to light work activity and the report from your treating physician, Dr. Walton indicating you can perform medium work activity . . . . The physical examination revealed that your hands and feet were warm and of normal coloration, no swelling was present and that you had tenderness over the medial distal aspect of your right knee, i.e.[,] over the medial compartment of your right knee. The drawer test was negative. There was no palpable fluid present. The motor examination was within normal limits. Fine

[LB]

movements were normal and romberg was negative.  The sensation test was also essentially normal. . . .

(Tr. 2.)

Shaner disputes the Appeals Council's characterization of the opinions' of Drs. Walton and Brewster that Shaner could perform medium and light work, respectively.  In addition, Shaner challenges the Appeals Council's failure to discuss Dr. Maukonen's findings that Shaner's right leg was smaller at the thigh and calf; and that Shaner "is unable to do tandem walking and is unsteady and unsure without using his cane for balance."  (Tr. 222.)  Shaner also challenges the Appeals Council's finding that Dr. Maukonen's opinion was not relevant to the period before the expiration of his date last insured ("DLI"), December 31, 2007.

Under the regulations, if "new and material evidence is submitted," the Appeals Council "shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision.  It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record."  20 C.F.R. §§ 404.970(b), 416.1470(b).  Further, the Appeals Council is required to then "make a decision or remand the case to an administrative law judge."  20 C.F.R. § 404.979.  The Appeals Council "may affirm, modify or reverse the administrative law judge hearing decision."  *Id.*

Here, the Appeals Council considered the additional evidence from Dr. Maukonen, and concluded the "additional evidence submitted does not warrant any change in the Administrative Law Judge's findings and conclusions."  (Tr. 2.) Under these circumstances, the district court should consider both the ALJ's decision and the additional materials submitted to the Appeals Council.  *See*

[LB]

*Ramirez v. Shalala,* 8 F.3d 1449, 1452 (9th Cir.1993) ("we consider on appeal both the ALJ's decision and the additional material submitted to the Appeals Council"); *accord Vasquez v. Astrue,* 572 F.3d 586, 595 n.7 (9th Cir. 2009); *Lingenfelter,* 504 F.3d at 1030 n.2; *see also Harman v. Apfel,* 211 F.3d 1172, 1180 (9th Cir. 2000).

The Commissioner insists the court should not consider Dr. Maukonen's reports because they are not material and Shaner failed to show good cause for its untimely submission. In this Circuit, the good cause requirement has been applied primarily when new and material evidence is presented in support of a request for remand under sentence six of 42 U.S.C. § 405(g). Under sentence six, the district court may remand, without a substantive ruling on the correctness of the Commissioner's decision, for agency consideration of new and material evidence when there was good cause for not presenting the evidence during the decision-making process before the agency.

The present case differs because Shaner offers the new evidence in support of his substantive challenge to the ALJ's decision under sentence four of section 405(g). Section 405(g) "authorizes district courts to review administrative decisions in Social Security benefit cases." *Akopyan v. Barnhart,* 296 F.3d 852, 854 (9th Cir. 2002). Sentence four and sentence six of section 405(g) "set forth the exclusive methods by which district courts may remand to the Commissioner." *Id.* A remand under sentence four is "essentially a determination that the agency erred in some respect in reaching a decision to deny benefits." *Id.* A remand under sentence six, however, "may be ordered in only two situations: where the Commissioner requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." *Id.* Thus, if claimant is not asking for a substantive ruling, but only for a remand to consider new evidence, it is a sentence six remand and good cause must be shown. If claimant is

[LB]

Page 15 - FINDINGS AND RECOMMENDATION

seeking a substantive ruling on alleged errors in the decision, it is under sentence four of section 405(g).

This Circuit has not recognized a good cause requirement applicable in these circumstances. The Commissioner argues here, however, that the requirements to remand a case for consideration of new evidence can only be found at sentence six and not at sentence four of 42 U.S.C. § 405(g). Relying on Judge Rymer's concurring opinion in an unpublished decision from the Ninth Circuit, *Angst v. Astrue*, 351 Fed. Appx. 227, 229-30 (9th Cir. 2009), the Commissioner contends that a sentence four remand, by definition, cannot be based upon evidence that was never presented to the ALJ, i.e., evidence submitted for the first time to the Appeals Council. The Commissioner urges this court to adopt Judge Rymer's argument in *Angst v. Astrue*, that the Ninth Circuit follow the Seventh Circuit's approach and "hold that when the decision being reviewed is the decision of the ALJ, '[t]he correctness of that decision depends on the evidence that was before him.'" 351 Fed. Appx. at 229-30 (concurring opinion) (*quoting Eads v. Secretary of DHHS*, 983 F.2d 815, 817 (7th Cir. 1993).

In her concurring opinion, Judge Rymer noted that the First, Third, Sixth and Eleventh Circuits are in accord with the Seventh Circuit's approach, while the Second, Fourth, Fifth, Eighth and Tenth Circuits have held that the courts should consider new evidence not presented to the ALJ if the Appeals Council considers that evidence in denying review. *Id.* at 230 n.3 (cases cited therein). Additionally, in Judge Rymer's view, the Ninth Circuit has never decided whether the courts should consider evidence presented for the first time to the Appeals Council despite the decision in *Ramirez v. Shalala*, 8 F.3d 1449. *Angst*, 351 Fed. Appx. at 239 ("I realize that we considered new evidence presented to the Appeals Council in *Ramirez* . . . but the government didn't contend the court should not consider the new evidence on appeal, § 405(g) wasn't argued, and we didn't mention it."). Thus,

[LB]

Page 16 - FINDINGS AND RECOMMENDATION

under Judge Rymer's formulation, a claimant challenging the ALJ's decision based on evidence not before the ALJ may seek only a remand and an order to the ALJ to consider the new evidence. *Id.* at 230. Moreover, a federal court may grant such a request *only* upon a showing of good cause and a reasonable possibility the additional evidence would change the outcome. *Id.* (Emphasis added).

This court declines to adopt the rule proposed by Judge Rymer in *Angst*. Absent Supreme Court or Ninth Circuit precedent to the contrary, this court will follow the rule applied in *Ramirez*, and in numerous subsequent cases, that expressly directs the court to consider both the ALJ's decision and the additional material submitted to the Appeals Council. 8 F.3d at 1451-52. *Accord Vasquez*, 572 F.3d at 595 n.7 ("Because this evidence was submitted to and considered by the Appeals Council, and is part of the administrative record, this Court may consider it in reaching its final decision even though the ALJ did not have the benefit of this information during the initial hearing."); *Lingenfelter*, 504 F.3d at 1030 n.2 (quoting *Ramirez*, court considers new evidence presented to the Appeals Council ); *Harman*, 211 F.3d at 1180-81 (9th Cir. 2000) ("We properly may consider the additional materials because the Appeals Council addressed them in the context of denying appellant's request for review."); *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir.1996) ("Although the Appeals Council affirmed the decision of the ALJ denying benefits to Gomez, this evidence is part of the record on review to this court.").

Here, the Appeals Council concluded the evidence from Dr. Maukonen was not material, stating that the report provided no basis for changing the ALJ's decision. (Tr. 2.) To warrant a remand, Shaner must demonstrate the new evidence is material to a disability determination. *See Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001); *see also* 20 C.F.R. § 404.970(b) (new evidence must be received if it is *material* and relates to the relevant period) (emphasis added).

[LB]

Evidence is material under section 405(g) if it bears "directly and substantially on the matter in dispute" and there is a "reasonable possibility" that the new evidence would have changed the outcome. *Mayes*, 276 F.3d at 462 (quotations and citation omitted).

Finally, while the post-hearing evidence considered by the Appeals Council is considered part of the record on review by this court, the Appeals Council is not required to make any particular evidentiary finding with respect to the new evidence. *See, e.g., Gomez*, 74 F.3d at 972; *Allison v. Apfel*, No. 99-6162-HA, 2000 WL 1141036, at *6 (D. Or. 2000). Thus, Shaner's assignments of error with respect to the Appeals Council's characterization of Dr. Maukonen's assessment are not well-founded. Rather, this court must review the new evidence, Dr Maukonen's June and May 2008 assessments, to determine simply whether the evidence is material.

As a threshold matter, the Appeals Council determined Dr. Maukonen's opinion that Shaner was limited to less than sedentary work did not appear to be relevant to the period before the DLI, December 31, 2007. (Tr. 2.) It is undisputed, however, that Dr. Maukonen reviewed Shaners's medical records from early 2002 to the present, and concluded that Shaner's limitations were present "at least since 2/14/06." (Tr. 220, 229.) As Dr. Walton noted in his report, Shaner reported his symptoms were "particularly bad' after falling in February 2006. (Tr. 218.) Consequently, the new evidence relates to the relevant period as required by section 404.970(b).

Next, after examining Shaner and reviewing the medical evidence of record, Dr. Maukonen submitted a detailed report regarding Shaner's limitations and capacity for work. (Tr. 218-223.) For example, Dr. Maukonen determined that, at lease since February 2006, Shaner needed to elevate his knee four out of eight hours each day; and that Shaner's knee condition was severe enough to prevent a regular work schedule on two or more days each month. Additionally, Dr. Maukonen concluded

[LB]

Page 18 - FINDINGS AND RECOMMENDATION

that Shaner could walk up to one hour in an eight hour day and 10-15 minutes without interruption, but he could do so only "with a cane on smooth surfaces." (Tr. 225.) This additional evidence, admitted into the record by the Appeals Council, bears "directly and substantially" on the ALJ's disability determination. Moreover, the court finds there is a reasonable possibility Dr. Maukonen's assessments, when considered with the other evidence of record, may have altered the ALJ's finding that Shaner did not satisfy the criteria for any listing and he retained the RFC to perform his past relevant work. Accordingly, remand is appropriate to permit the ALJ an opportunity to consider Dr. Maukonen's report in determining whether Shaner suffers a listed impairment, i.e., inability to ambulate effectively, and to consider how the limitations set forth by Dr. Maukonen affect Shaner's RFC and his ability to work.

III.    Shaner's Testimony

Shanner maintains the ALJ failed to provide clear and convincing reasons for rejecting his testimony. Shaner testified that he mostly performed construction work, but he had not worked since April 30, 2004. (Tr. 23, 24.) He stated he was beginning to have problems with his left knee, as well as his right, and wore a brace on both knees. (Tr. 25.) Shaner explained that he takes several over-the-counter medications, including Advil, Excedrin, Ibuprofen, and Tylenol, and he will take two capsules if his knee is swollen from activity. (Tr. 26-27.) In addition, Shaner told the ALJ that every three or four months he either twists or injures his knee and he then has "to stay off of it for at least a week to get it to settle down." (Tr. 27.) Shaner testified that it had become harder for him to walk and he shops for the household about twice a week by taking very short trips and getting just what is needed for one or two days. (Tr. 29-30.) Often, his children will accompany him on the shopping trip to assist him. (Tr. 31.) He explained that, at most, it takes half an hour for the entire trip and

[LB]

about 10 to 15 minutes in the store. (Tr. 29-30.) About every three shopping trips, however, Shaner is forced to leave the store and go home in the middle of shopping. (Tr. 29.) After shopping, he rests at home and his children put away the groceries. (Tr. 30-31.) Shaner testified that for the past seven years he has been unable to walk on uneven or rough ground and sometimes has trouble getting up the step on his porch. (Tr. 31.)

Shaner testified that his right knee swells four or five times a month. (Tr. 36.) On those days, he keeps the knee elevated, applies ice, and waits a day to get his knee "back on track." (Tr. 38.) Even on a typical day, he reclines his knee on a couch, with his knee at waist height and a pillow underneath. (Tr. 40, 46.) Shaner testified that a sitting job would be "pushing it" because his knee stiffens and cramps while he is sitting. (Tr. 39.) Shaner suggested that if a job allowed him to recline and put his leg up, that would definitely help because on a typical day he elevates his knee for about four hours out of an eight-hour period. (Tr. 41.) Shaner stated pain is "a fact of life" for him, but leg weakness and fatigue are his biggest concerns to the point he worries whether he will be able to get home after a day of work. (Tr. 47.)

Shaner stated he could no longer perform his past work as an order taker because his condition had worsened after a fall in 2005. (Tr. 32-33.) He has difficulty sleeping because of pain, sometimes to the point of nausea and vomiting. (Tr. 34.) Shaner is afraid to take medication stronger than those available over-the-counter because "[i]t all has an addictive [nature] to it and I don't need that. I already have enough to deal with. . . ." (Tr. 35.) Shaner is able to perform chores such as laundry by breaking the tasks down and doing only bits at a time. (Tr. 36.)

The ALJ is required to engage in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Lingenfelter*, 504 F.3d at 1035-36.

[LB]

First, the ALJ must determine whether claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Bunnell v. Sullivan,* 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted); *accord Lingenfelter,* 504 F.3d at 1036. The claimant "need not show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir. 1996). "Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." *Id.; see also Reddick,* 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.").

Next, if a claimant meets the first test and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen,* 80 F.3d at 1281; *see also Robbins, v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").

Here, at step two of the five-step sequential disability determination analysis, the ALJ determined Shaner suffered from a severe impairment – a knee disorder. While the ALJ subsequently determined that the impairment did not meet or medically equal the listings at step three, the ALJ's impairment finding at step two of the analysis indicates Shaner presented objective medical evidence of an underlying impairment that could reasonably cause some degree of the

Page 21 - FINDINGS AND RECOMMENDATION                                             [LB]

alleged symptoms. *See Bunnell*, 947 F.2d at 344. Because Shaner presented objective medical evidence of an underlying impairment and there is no evidence of malingering, the ALJ was required by the second step of the credibility analysis to provide clear and convincing reasons for rejecting Shaner's testimony. *See Lingenfelter*, 504 F.3d at 1036. Thus, the court must determine whether the ALJ satisfied that burden.

The ALJ provided four reasons for the finding. (Tr. 15-16.) First, the ALJ determined Shaner's statements concerning his impairments and the impact of those impairments on his ability to work are "self-perceived" and not supported by the medical evidence. Next, the ALJ determined Shaner retained the ability to perform many household chores, drive an automobile and attend appointments. Third, the ALJ stated Shaner's testimony was inconsistent with previous statements regarding why he stopped working. Finally, the ALJ offered his observation that Shaner's alleged need to elevate his leg "would not be a required strategy" for an orthopedic injury such as Shaner's. As a result of these findings, the ALJ excluded from his RFC determination Shaner's testimony that he needed to elevate his leg four hours in an eight-hour period; or that four or five times a month his knee swells and he must use ice on his knee and keep it elevated for one full day; or that he was unable to walk on uneven surfaces and, at times, climb even one stair.

The court concludes the ALJ's stated reasons do not constitute clear and convincing reasons for rejecting Shaner's subjective pain and symptom testimony. The ALJ's first reason, that Shaner's symptoms, as alleged, were self-perceived restrictions not supported by the medical evidence, provides no support for the lack of credibility finding because the support for that reason was simply a vague and conclusory statement that Shaner's testimony was "not supported by the medical evidence by clinical signs, symptoms, or laboratory findings." (Tr. 15.) The ALJ did not reference

[LB]

any specific medical source, test result or finding in support of this conclusion.  In fact, there is

objective medical evidence in the record to support Shaner's claim that he must elevate his leg four

hours in an eight hour period.  (Tr. 213, 216.)  Further, the ALJ's statement that there was no

persuasive medical statement from a treating source to substantiate Shaner's claim for benefits is

puzzling in the context of Shaner's credibility analysis.  The law is well-established that Shaner is

not required to prove his degree of pain or symptoms by objective medical evidence.  *See*

*Lingenfelter*, 504 F.3d at 1040 n.11 (ALJ may not reject a claimant's subjective pain or symptom

testimony simply on the ground it is not supported by objective of medical evidence).  Further, it is

clear from the record that there was *not* a consensus of medical opinions that Shaner retained the

RFC to perform his past relevant work as an order taker.

        The ALJ' second reason, Shaner's alleged ability to perform household chores, drive and

attend appointments, does not accurately depict the activities of Shaner's daily life.  For example,

Shaner testified that he often must bring his children with him to accomplish the grocery shopping.

Moreover, it is not uncommon ("every three times") for Shaner to abandon his efforts to do the

grocery shopping.  Shaner also testified that he manages a household chore such as laundry by doing

only a little bit at a time, i.e., load some laundry then rest.  Shaner's ability to engage in some

activities of daily living is not a legitimate basis for finding him not credible.  That Shaner makes

an effort to assist with chores at home, but often fails because of his impairments, is not a clear and

convincing reason for concluding his symptoms did not preclude him from maintaining employment.

*See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (ability to perform activities that are so

undemanding that they cannot be said to bear a meaningful relationship to activities required in the

workplace); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("mere fact that a plaintiff has

carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability.")

Third, the ALJ noted that Shaner's testimony was inconsistent with prior statements regarding his departure from his last job. The record shows that Shaner stopped working as an order taker at a call center when the business moved in 2004. (Tr. 32.) Shaner testified he was able preform the work at the time, but could no longer do such work because his condition worsened significantly after a fall in 2005. (Tr. 32-33.) The court finds that Shaner's statements are neither inconsistent nor provide a legitimate basis for discounting his subjective pain and symptoms allegations.

Finally, the ALJ offered that Shaner elevating his leg "would not be a required strategy" for an orthopedic injury. Clearly, this personal opinion of the ALJ, which is contradicted by actual medical evidence in the record, *see, e.g.,* Tr. 213, 216, cannot provide a legitimate basis for rejecting Shaner's subjective testimony.

The court finds the ALJ failed to articulate specific, clear and convincing reasons for his decision to exclude Shaner's pain and symptoms testimony from the RFC assessment and, therefore, the RFC assessment is not supported by substantial evidence. *See Lingenfelter*, 504 F.3d at 1040-41. "Nor does substantial evidence support the ALJ's five-step determination since it was based on this erroneous RFC assessment" *Id.* at 1041. As such, the court must determine whether Shaner's testimony should be credited as a matter of law, or whether this case should be remanded for additional proceedings. Shaner argues that because the ALJ failed to provide clear and convincing reasons for rejecting his testimony that evidence should be credited as a matter of law, i.e., credited as true. *See Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004).

Over twenty years ago, in *Varney v. Secretary of Health and Human Services (Varney II)*, 859 F.2d 1396, 1398-99, 1401 (9th Cir. 1988), the Ninth Circuit adopted a credit-as-true rule in cases where the ALJ failed to provide adequate justification for rejecting a claimant's pain testimony. Simply put, in those instances, the Commissioner must accept, as a matter of law, claimant's subjective testimony where there are no outstanding issues to be resolved before a disability determination can be made and where it is clear from the administrative record that benefits would be awarded if claimant's testimony was credited. *Id.* at 1041. Last year, in *Vasquez v. Astrue*, 572 F.3d 586, the Ninth Circuit acknowledged that since *Varney II* was decided, a split of authority had developed within the Circuit over whether the credit-as-true rule is mandatory or discretionary. The court in *Vasquez* did not settle the conflict, however, because it found there were outstanding issues to be resolved before a proper disability determination could be made. *Vasquez*, 572 F.3d at 591.[5]

Here, there is new medical testimony concerning Shaner's impairments relevant to whether his limitations may satisfy the severity requirements of Listing § 1.02A or §1.03. In addition, the ALJ must make specific findings, supported by clear and convincing reasons, regarding Dr. Walton's opinion and Shaner's credibility. While the ALJ did posit a hypothetical to the VE that included some additional limitations, that hypothetical failed to consider limitations discussed above such as a requirement that Shaner elevate his knee four of eight hours each day, or Dr. Maukonen's finding that Shaner could walk only with a cane on smooth surfaces. Thus, the court is unable to find on this

---

[5]The court in *Vasquez* credited claimant's testimony as true after noting that other factors may justify the application of the credit-as-true rule, even where the application of the rule would not result in an immediate award of benefits. *Id.* at 593 (*citing Hammock v. Bowen*, 879 F.2d 498, 503 (9th Cir. 1989). For example, if claimant is of advanced age and had already experienced a severe delay in his application, or if it appears an ALJ ignored evidence to reach an opposite, pre-determined conclusion. *Id.* The factors discussed in *Vasquez* are neither argued nor present in this case.

record that Shaner is disabled and order an immediate payment of benefits. *See, e.g., Harman*, 211 F.3d at 1178-79. Consequently, a remand is warranted for the ALJ to consider the new medical evidence, resolve any conflicts in the record, and make specific findings regarding the medical source statements and Shaner's testimony. *Compare Moisa*, 367 F.3d at 887 ("there are no outstanding issues that must be resolved before a determination of disability can be made, and [] it is clear from the record that the ALJ would be required to find Moisa disabled if his testimony were credited); *see also INS v. Ventura*, 537 U.S. 12, 16 (2002) (*per curium*) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation").

## Recommendation

Based on the foregoing, the ALJ's decision that Shaner was not disabled and is not entitled to DIB under Title II of the Act was not based on correct legal standards or supported by substantial evidence. The Commissioner's decision should be REVERSED and REMANDED for additional proceedings. On remand, the ALJ is directed: (1) pursuant to 20 C.F.R. § 404.1527, give further consideration to the opinions of Drs. Walton and Maukonen, including the findings that Shaner elevate his leg each day and that he is unable to ambulate on uneven or rough surfaces, and explain the weight given to such opinion evidence; (2) pursuant to 20 C.F.R. § 404.1529, evaluate Shaner's subjective complaints and provide a rationale for the evaluation of symptoms; and (3) pursuant to 20 C.F.R. § 404.1545(4), give additional consideration to Shaner's maximum RFC and provide an explanation with specific references to evidence of record in support of the RFC determination.

*Scheduling Order*

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due **January 12, 2011**. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 28th day of December 2010

John V. Acosta
United States Magistrate Judge